UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT WARE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:22-cv-00993-AMM-JHE |
| SHERIFF SAMANIEGO, et al., | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Robert Ware filed a *pro se* amended complaint under 42 U.S.C. § 1983 for alleged violations of his civil rights. (Doc. 14). He names the following defendants in the amended complaint: Dr. Frantzcy Ceneus and Registered Nurse Brandy Cannon. (Doc. 14 at 1–3). Mr. Ware seeks monetary and injunctive relief.[1] (Doc. 14 at 6). The amended complaint is before the undersigned magistrate judge for a preliminary report and recommendation. *See* 28 U.S.C. § 636(b)(1); *McCarthy v. Bronson*, 500 U.S. 136 (1991). For the reasons to follow, the undersigned recommends the court grant the defendants' partial motion to dismiss under 42 U.S.C. § 1997e(a) based on Mr. Ware's failure to exhaust administrative remedies. (Doc. 29).

**I. Procedural History**

On March 7, 2025, the undersigned entered an Order for Special Report directing the Clerk of Court to forward copies of the amended complaint to each of the remaining defendants and directing the defendants to file a Special Report addressing Mr. Ware's factual allegations. (Doc.

---

[1] Mr. Ware alleged claims against additional defendants in his amended complaint. (Doc. 14). On February 7, 2025, the undersigned entered a report recommending all claims in this action be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failing to state a claim upon which relief may be granted, except Mr. Ware's medical claims against Ceneus and Cannon. (Doc. 18). On March 3, 2025, the court accepted the undersigned's recommendation. (Doc. 19).

20).  The undersigned advised the defendants that if they intended to argue that Mr. Ware's claims are due to be dismissed for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a), they should file any motion to that effect within 60 days.  (Doc. 20 at 3).

After the court granted an extension (Docs. 26, 27), defendants Ceneus and Cannon filed a partial motion to dismiss with supporting evidence on June 20, 2025.  (Doc. 29).  The undersigned ordered Mr. Ware to respond to the defendants' partial motion to dismiss.  (Doc. 30).  Mr. Ware filed a response on July 10, 2025.  (Doc. 31).  This matter is now ripe for review.

## II.  Standard of Review

The defendants contend that some of Mr. Ware's claims warrant dismissal under 42 U.S.C. § 1997e(a) based on his failure to exhaust administrative remedies prior to filing this action.  (Doc. 29).  The question of exhaustion under the PLRA is a "threshold matter" that federal courts must address before considering the merits of the case.  *See Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004).

Courts follow a two-step process when deciding whether an inmate has exhausted his administrative remedies.  First, the court

> looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.

*Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (citing *Bryant v. Rich*, 530 F.3d 1368, 1373–74 (11th Cir. 2008)).

If the complaint survives this initial step, the court then makes "specific findings in order to resolve the disputed factual issues related to exhaustion."  *Turner*, 541 F.3d at 1082.  In this second phase, "[t]he judge . . . may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient

2

opportunity to develop the record." *Trias v. Fla. Dep't of Corr.*, 587 F. App'x 531, 535 (11th Cir. 2014) (citing *Bryant*, 530 F.3d at 1376). The defendant bears the burden of proving that the plaintiff failed to exhaust his administrative remedies. *Turner*, 541 F.3d at 1082.

### III. Factual Allegations

#### A. Mr. Ware's Allegations

When the events underlying the amended complaint occurred, Mr. Ware was incarcerated in the Shelby County Jail. (Doc. 14 at 2, 4). Mr. Ware is currently in state custody and incarcerated in the St. Clair Correctional Facility. (Docs. 15, 16).

Mr. Ware alleges that between 2021 and 2022, Dr. Ceneus and Nurse Cannon were deliberately indifferent to his serious medical conditions. (Doc. 14 at 4–6). He states that Ceneus and Cannon failed to properly diagnose and treat him for kidney failure, a toe infection, swollen legs, and eye damage. (Doc. 14 at 5). Mr. Ware contends in September 2022, outside medical providers recommended that he undergo laser surgery for his eyes, but Ceneus and Cannon delayed scheduling the procedure. (Doc. 14 at 5).

#### B. Shelby County Jail's Grievance Procedure

The Shelby County Jail has a grievance policy that is included in the Inmate Handbook.[2] (Doc. 29 at 9, Samaniego Decl. ¶ 1; Doc. 29 at 12–15). Employees and agents of Southern Health Partners—Shelby County Jail's contracted jail medical provider—have access to and are responsible for responding to grievances and appeals related to medical care. (Doc. 29 at 9, Samaniego Decl. ¶ 4).

An inmate must first attempt to resolve a complaint informally with a staff member at the

---

[2] Mr. Ware states that he did not receive a copy of the Inmate Handbook but acknowledges he knew he was required to file a grievance and an appeal. (Doc. 31 at 3).

3

lowest level, preferably in person, or through a submitted request. (Doc. 29 at 12). If the matter is not resolved informally, an inmate is required to use the Inmate Grievance procedure "for ALL types of grievances," including inappropriate behavior by jail staff, jail conditions, jail policies and procedures, administrative matters, and medical issues. (Doc. 29 at 12–13) (capitalization in original).

An inmate may file a formal Inmate Grievance using the dorm kiosks. (Doc. 29 at 12). If the kiosk is unavailable, an inmate may request a grievance form from an officer at any time. (Doc. 29 at 12). According to the grievance procedure, "[i]nmates should be as specific as possible when filing a grievance and must detail their previous attempts to resolve the issue." (Doc. 29 at 12).

If an inmate disagrees with the answer to a properly submitted grievance, the inmate may appeal to the next highest level within five days. (Doc. 29 at 15). The grievance procedure explains:

> If a sergeant answered your grievance, you may appeal to a lieutenant. If a lieutenant answered your grievance, you may appeal to the Assistant Division Commander. After that, the Captain will be the last level of appeal. Inmates have five days to submit an appeal after the receipt of each answer of the grievance process. Limitations for appealing disciplinary actions may vary from this and will be based on the Inmate Disciplinary policy. Decisions made by the Captain are final and not subject to further appeal within the Sheriff's Office.

(Doc. 29 at 15).

The grievance procedure defines a medical grievance as "a disagreement with an inmate's current medical treatment or lack of treatment by contracted Medical Staff." (Doc. 29 at 13). An inmate may have cause for a grievance if he believes medical staff has engaged in excessive, unnecessary, or discriminatory action or inaction. (Doc. 29 at 13). All medical grievances are referred to the medical supervisor. (Doc. 29 at 13). If an inmate appeals, the matter is referred to

4

the Medical Director for review.³ (Doc. 29 at 13). Jail Administration reviews all medical grievances but will not make decisions which are more appropriate for medical professionals. (Doc. 29 at 13).

Inmates must adhere to general guidelines for requests and grievances. (Doc. 29 at 14). An inmate must complete and submit all requests and grievances as soon as possible after the occurrence of any specific event. (Doc. 29 at 14). An inmate must not send more than one grievance or request addressing the same issue unless an emergency exists. (Doc. 29 at 14). Moreover, only one issue per form or kiosk entry is permitted. (Doc. 29 at 14).

### C. Mr. Ware's Relevant Grievances

On November 25, 2021, Mr. Ware filed an emergency grievance stating that he had not been administered pain pills for diabetic nerve pain in his feet. (Doc. 29 at 30). Mr. Ware complained that he had been in pain for two days. (Doc. 29 at 30). On November 26, 2021, Nurse Amanda Wideman responded, "I am showing that you received every single dose twice daily. It is a yellow capsule." (Doc. 29 at 30).

On January 18, 2022, Mr. Ware filed an emergency grievance stating that he had submitted several sick call requests concerning his legs and feet. (Doc. 29 at 27). Mr. Ware complained that medical staff was not properly treating him for type 1 diabetes. (Doc. 29 at 27).

On January 19, 2022, Nurse Wideman responded, "We are sending you to a foot specialist for that. I just have not been there to tell you. I will be there tonight and tomorrow night so I will come talk to you about it." (Doc. 29 at 27).

---

³ In her declaration, Nurse Cannon states that jail medical staff is responsible for responding to medical grievances and if an inmate is not satisfied with a response, he or she may submit an appeal to the Medical Team Administrator ("MTA"). (Doc. 29 at 55, Cannon Decl. ¶ 5). Cannon further states that she served as the MTA during Mr. Ware's incarceration in the Shelby County Jail. (Doc. 29 at 55, Cannon Decl. ¶ 4).

In April and May 2022, Mr. Ware submitted sick call requests related to an eye condition. (Doc. 29 at 56, Cannon Decl. ¶ 8). On May 9, 2022, Mr. Ware filed a grievance addressed to a sergeant, lieutenant, or captain, and complained that he was being charged "for [his] diabetic issues." (Doc. 29 at 34). On May 13, 2022, Nurse Wideman responded:

> You have one sick call for 5/6 and it was for the complaint of vision problems. It is my understanding that you had this issue prior to coming here and that you were receiving injections for this? When you yourself do not tell us these things and we instead have to hear it from a third party, it causes an issue. You will need to come to medical and sign a release form for us to get records of this so we will know the reason behind this.

(Doc. 29 at 34). Medical staff later referred Mr. Ware to a specialist for his eye condition. (Doc. 29 at 56, Cannon Decl. ¶ 8).

On October 4, 2022, Mr. Ware filed an emergency grievance addressed to a sergeant, lieutenant, or captain stating that his toe was infected. (Doc. 29 at 41). Mr. Ware asserted that he was scheduled for wound care everyday but did not have it that day. (Doc. 29 at 41). He stated that he had type 1 diabetes and did not want his toe to be amputated. (Doc. 29 at 41). On the same day, jail staff responded that deputies would escort Mr. Ware to the medical unit after dinner. (Doc. 29 at 41).

On October 6, 2022, at 5:48 p.m., Mr. Ware filed an emergency grievance addressed to a sergeant, lieutenant, or captain in which he complained about an infection in his toe. (Doc. 29 at 42). Mr. Ware stated again that he was supposed to have wound care but had not been treated. (Doc. 29 at 42). On the same day at 7:40 p.m., Mr. Ware filed another emergency grievance asking why he was being denied medical care. (Doc. 29 at 42). At 10:49 p.m., Mr. Ware filed yet another emergency grievance stating that the shift had ended, and he was not provided wound care for his toe. (Doc. 29 at 42). He also stated, "[I'm] following the chain of command[,] thanks for your time." (Doc. 29 at 42). The following day, jail staff responded, "Medical has been made aware."

6

(Doc. 29 at 42).

On October 8, 2022, Mr. Ware filed an emergency grievance addressed to a sergeant, lieutenant, or captain asking to be escorted to wound care. (Doc. 29 at 43). On the same day, jail staff responded, "The nurse said you will get it after she does insulin." (Doc. 29 at 43).

On October 10, 2022, Mr. Ware filed an emergency grievance asking to be taken to wound care. (Doc. 29 at 44). It does not appear that jail staff responded to Mr. Ware's grievance in writing. (Doc. 29 at 44).

### IV. Analysis

The defendants contend that Mr. Ware failed to exhaust his administrative remedies concerning his eye condition and toe infection prior to filing this action and therefore his claims are subject to dismissal pursuant to 42 U.S.C. § 1997e(a). (Doc. 29). The undersigned agrees.

Title 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act ("PLRA"), provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

In *Alexander v. Hawk*, the Eleventh Circuit Court of Appeals discussed the PLRA's amendment of 42 U.S.C. § 1997e, concluding that "Congress now has mandated exhaustion," and "exhaustion is now a pre-condition to suit [by an inmate]." 159 F.3d 1321, 1325–26 (11th Cir. 1998). Because exhaustion is mandated by the statute, a court has no discretion to waive this requirement. *Id*. at 1326. The Supreme Court, interpreting the intent of Congress, concluded that

7

exhaustion of administrative remedies is now mandatory even if the procedures do not meet certain "minimum acceptable standards" of fairness and effectiveness, and courts cannot excuse exhaustion even when it would be "appropriate and in the interests of justice." *Booth v. Churner*, 532 U.S. 731, 740 n.5 (2001) (internal quotation marks and citations omitted).

"Under § 1997e(a), the exhaustion requirement hinges on the availability of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016) (internal quotation marks omitted) (alteration adopted). The Supreme Court explained that the ordinary meaning of the word "available" is "'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id*. at 642 (quoting *Booth v. Churner*, 532 U.S. at 737–38 (citations omitted)). The Court listed three circumstances in which an administrative procedure is considered "unavailable" to inmates: (1) where the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative procedure is "so opaque that it becomes, practically speaking, incapable of use . . . . [and] no ordinary prisoner can discern or navigate it"; and (3) when "prison administrators thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation." *Id*. at 643–44.

### A. Eye Condition

In April and May 2022, Mr. Ware submitted sick call requests related to an eye condition. (Doc. 29 at 56, Cannon Decl. ¶ 8). On May 9, 2022, Mr. Ware filed a grievance addressed to a sergeant, lieutenant, or captain, and complained that he was being charged "for [his] diabetic issues." (Doc. 29 at 34). On May 13, 2022, Nurse Wideman responded that Mr. Ware had filed a sick call on May 6, 2022, in which he complained of vision problems. (Doc. 29 at 34). Wideman

directed Mr. Ware to come to the medical unit and sign a release form so that medical staff could obtain his medical records about the condition. (Doc. 29 at 34). Medical staff subsequently referred Mr. Ware to a specialist for his eye condition. (Doc. 29 at 56, Cannon Decl. ¶ 8).

The record reflects that Mr. Ware filed sick call requests concerning his eye condition (Doc. 29 at 56, Cannon Decl. ¶ 8) and a grievance in which he complained about medical charges for his diabetic symptoms (Doc. 29 at 34). But lacking is any evidence that Mr. Ware filed a grievance concerning medical staff's failure to treat his eye condition.

In response to the defendants' partial motion to dismiss, Mr. Ware alleges he experienced "blindness" due to his eye condition and, as a result, he had to rely on other inmates to file grievances about his eye condition on the kiosk "at the end of June 2022 until the [beginning] July, 2022." (Doc. 1 at 3; Doc. 31 at 6, Ware Decl. ¶¶ 3, 5). Mr. Ware further alleges that he asked inmates to complete grievance forms concerning his eye condition during this same time and he personally gave the grievance forms to the officer on duty. (Doc. 31 at 3; Doc. 31 at 6, Ware Decl. ¶¶ 3, 5). Mr. Ware asserts he never received a response to "any of the numerous grievances he filed relating to his eye condition." (Doc. 31 at 3).

**B. Toe Infection**

In October 2022, Mr. Ware filed several emergency grievances addressed to a sergeant, lieutenant, or captain concerning his toe infection. (Doc. 29 at 41–44). Jail staff responded to three of those grievances in October 2022. (Doc. 29 at 41–43). Absent from the record is evidence that Mr. Ware appealed those responses.

Ware contends the "blindness" he experienced due to his eye condition caused him to rely

9

on other inmates to file appeals in October 2022 concerning his toe infection.[4] (Doc. 31 at 6, Ware Decl. ¶¶ 4, 5). He states he never received a response to the appeals related to his toe infection. (Doc. 31 at 3; Doc. 31 at 7, Ware Decl. ¶ 6).

### C. Post-Suit Exhaustion

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Eleventh Circuit has interpreted the term "brought," as used in section 1997e(a), to mean "the filing or commencement of a lawsuit, not . . . its continuation." *Harris v. Garner*, 216 F.3d 970, 974 (11th Cir. 2000). As such, an inmate must exhaust his administrative procedures "*before* pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added).

Taking Mr. Ware's allegations as true that he filed grievances concerning his eye condition "at the end of June 2022 until the [beginning] July, 2022" (Doc. 31 at 6, Ware Decl. ¶ 3), and appeals concerning his toe infection in "October 2022," (Doc. 31 at 6, Ware Decl. ¶ 4), he could not have exhausted the grievance procedure prior to initiating this action on June 28, 2022.[5] Accordingly, the defendants' partial motion to dismiss (Doc. 29) is due to be granted at the first step of the *Turner* analysis.

---

[4] Mr. Ware states in his declaration that he relied on inmates to file appeals on his behalf concerning his toe infection "in October 2022 until the [beginning] of September 2022." (Doc. 31 at 6–7, Ware Decl. ¶ 4). Although the ending date is unclear, the undersigned assumes the earliest Mr. Ware submitted appeals was October 2022.

[5] Because an inmate proceeding *pro se* has virtually no control over the mailing of his pleading, it is deemed to be filed at the time the prisoner delivers the pleading to prison or jail officials to be mailed. *See Houston v. Lack*, 487 U.S. 266, 270–72 (1988). Mr. Ware dated his original complaint June 28, 2022. (Doc. 1 at 10). Therefore, the undersigned deems the original complaint to have been filed on that date.

Any action Mr. Ware took to exhaust the grievance procedure after the commencement of this action does not satisfy the exhaustion requirement. Indeed, "[t]he filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." *McKeithen v. Jackson*, 606 F. App'x 937, 939–40 (11th Cir. 2015) (citing *Johnson v. Meadows*, 418 F.3d 1152, 1158–59 (11th Cir. 2005)); *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1324 (11th Cir. 2007) ("The time the [PLRA] sets for determining whether exhaustion of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied."); *Harris v. Garner*, 216 F.3d at 982–84 (explaining that amending or supplementing the complaint to show exhaustion which was not complete when the action commenced will not suffice to meet the exhaustion requirement); *Pavao v. Sims*, 679 F. App'x 819, 825 (11th Cir. 2017) (holding that when a court is determining whether the plaintiff satisfied the PLRA's exhaustion requirement, it need not consider any actions that the plaintiff took after he filed the civil action); *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) ("The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint."); *Casey v. Dixon*, No. 4:24-cv-188, 2024 WL 5372252, at *2 (N.D. Fla. Dec. 3, 2024) (stating that the plaintiff could not bring claims "pursuant to a 'supplemental complaint' because none of the events occurring after the initiation of this case would be exhausted"); *Fowler v. Perry*, No. 5:20-cv-171, 2021 WL 11728282, at *3 (M.D. Ga. Dec. 10, 2021) (finding that even if the plaintiff exhausted his administrative remedies before submitting the amended complaint, his first complaint "serve[d] as the measure for whether Plaintiff properly exhausted his administrative remedies as required"); *Crook v. Horton*, No. 4:19-cv-611, 2020 WL 3052518, at *2 (N.D. Fla. May 6, 2020) (explaining that § 1997e(a) requires that no action may be brought until available administrative remedies are exhausted, and "it is not

enough to exhaust such remedies *after* filing a lawsuit or during the pendency of the case") (emphasis in original).

The intent of Congress in requiring exhaustion of administrative remedies is that "prison officials have an opportunity to address the grievance internally and rule on the grievance before the inmate files a complaint in federal court." *Johnson v. Meadows*, 418 F.3d at 1158. In *Johnson v. Meadows*, the Eleventh Circuit held an inmate did not timely exhaust his administrative remedies under the prison's grievance procedure. *Id*. at 1157–59. The Court concluded that none of the aims of § 1997e(a) were achieved. Specifically, "because prison officials did not review the merits of [the inmate's] complaint—his grievance did not spur the corrective action that might have obviated the need for litigation, there was no filtering of potential frivolous claims, and no development of an administrative record to assist the courts in deciding the controversy." *Id*. at 1159.

Mr. Ware did not exhaust the Shelby County Jail's grievance procedure concerning his eye condition and toe infection before he filed the present action, and jail and medical officials were not afforded an opportunity to take any corrective action concerning Mr. Ware's claims. Accordingly, Mr. Ware's deliberate indifference claims against the defendants concerning his eye condition and toe infection are due to be dismissed without prejudice for failure to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).[6]

---

[6] Generally, constitutional claims that are unexhausted are dismissed without prejudice to an inmate's re-filing after proper exhaustion unless future attempts to exhaust would be absolutely time-barred under the administrative grievance procedure. *See Bryant v. Rich*, 530 F.3d at 1374–75, n.11; *see also Johnson v. Meadows*, 418 F.3d at 1157. The Shelby County Jail does not appear to have a deadline for filing a grievance and the Inmate Handbook notes only that a grievance "should be completed and submitted as soon as possible after the occurrence of a specific event." (Doc. 29 at 14). As such, the undersigned recommends Mr. Ware's claims concerning his eye condition and toe infection be dismissed without prejudice.

## V. Recommendation

For these reasons, the undersigned **RECOMMENDS** the defendants' partial motion to dismiss (Doc. 29) be **GRANTED** and Mr. Ware's deliberate indifference claims based on his eye condition and toe infection be **DISMISSED WITHOUT PREJUDICE** under 42 U.S.C. § 1997e(a) due to Mr. Ware's failure to exhaust administrative remedies.

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within **14 days.** The objecting party must identify every objectionable finding of fact or recommendation and state the specific basis for every objection. The objecting party also must identify every claim in the complaint that the report and recommendation has not addressed. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

A party who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those same conclusions adopted in the District Judge's order. Without a proper objection, however, the court on appeal may review the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

After receiving the objections, a District Judge will conduct a *de novo* review of the relevant portions of the report and recommendation and may accept, reject, or modify in whole or in part the Magistrate Judge's findings of fact and recommendations. The District Judge will conduct a hearing if required by law and may exercise discretion to conduct a hearing or otherwise receive additional evidence. Otherwise, the District Judge may consider the record developed before the Magistrate Judge in making an independent determination of the relevant legal issues.

The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

A party may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment entered by a District Judge.

DONE this 15th day of August, 2025.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE